**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF GEORGIA**

**SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. CR410-005 |
| | ) | |
| ANTONIO GRIFFIN | ) | |

# REPORT AND RECOMMENDATION

Defendant Antonio Griffin moves to suppress the evidence seized from his residence during the execution of a state search warrant on September 23, 2009.[1] (Doc. 13.) The Court addressed this motion at a hearing on March 30, 2010. For the following reasons, the motion should be **DENIED**.

On September 22, 2009, Detective Kelvin Frazier of the Savannah-Chatham Metropolitan Police Department applied for a warrant to search the residence located at 5007 Sandra Street in Savannah, Georgia. (Doc. 14-1.) In an affidavit presented to a Chatham County Recorder's Court judge, Det. Frazier related that he had received information from an informant that Antonio Griffin, a

---

[1] Griffin also moved to suppress his post-arrest statements, but he withdrew that motion during the suppression hearing. (Doc. 13 at 2-3.)

convicted felon, had numerous weapons in his Sandra Street residence and that he intended to use those weapons to commit a murder. During multiple interviews conducted earlier that month, the informant indicated that he had recently been a guest in the home Griffin shared with his girlfriend. During that visit, the informant observed an AK-47 rifle, three handguns (a chrome .357, a 9mm, and a .45 caliber pistol), as well as ammunition for those weapons. He also observed "a large quantity of marijuana and pills" in the home. (*Id.* at 5.) When the informant asked about the weapons, Griffin stated that he was waiting for "Joe Nathan" to be released from prison because he intended to kill him. (*Id.*) The informant explained that in 2004 Joe Nathan and his brother, Nehemiah "Hag" Davis, had shot and killed Griffin's friend, Jermaine "Lil Buddha" Walker, and wounded Griffin. (*Id.*) Although Davis had received a life sentence for the homicide, Joe Nathan "beat" the murder charge and had received a five-year sentence for felon-in-possession of a weapon. (*Id.*) The informant further related that Griffin had shown him two stolen vehicles that he intended to use in the plot to kill Joe Nathan. (*Id.*)

When Det. Frazier showed the informant photos of Jermaine Walker, Nehemiah Davis, and a "Joe Nathan Givens," the informant confirmed that these were the individuals involved in the earlier shooting incident. (*Id.*) The informant then led the detective to the residence located at 5007 Sandra Street. There, the detective observed a light blue Suburban[2] and another vehicle registered to Lakesha Lee. A records check confirmed that Griffin and Lee had been arrested together on June 6, 2009 by the Georgia State Patrol, and that Lee had given the address of 5007 Sandra Street on that occasion. During surveillance of the residence, the detective observed both Griffin and Lee coming in and out of the home.

Det. Frazier acknowledged in his affidavit that the informant had been convicted of felony and misdemeanor charges, was currently incarcerated, and was motivated to furnish information to law enforcement in order to obtain "future consideration[] on pending charges." (*Id.* at 6.) Det. Frazier emphasized, however, that the informant had provided the police with information that had led "to over

---

[2] The informant had earlier indicated that the Suburban was sometimes driven by Griffin.

3

five arrests" for firearms and drug charges, and he noted that some of those arrests had led to federal convictions. (*Id.*) Frazier noted that information provided by the informant during his recent interviews had led to the capture of one of Savannah's most wanted felons. He also reported that the informant had "provided very detailed information" that had aided investigators in their effort to solve two Savannah homicides. (*Id.*) Finally, the detective pointed out that Griffin had previously been arrested for a drug crime and for criminal use of an altered ID, and he stated that Griffin was currently on bond for a pending drug offense.

Clearly, this information furnished ample probable cause that evidence of a crime was located inside Griffin's residence at 5007 Sandra Street. An informant of proven reliability had recently observed numerous firearms inside the home of a convicted felon and had learned that the weapons were intended to be used to settle a blood feud between Griffin and a person about to be released from prison. Through surveillance, the detective confirmed that Griffin and his girlfriend resided at that residence. A check of police records also established that

Griffin likely held a grudge against Joe Nathan Givens, just as the informant had indicated. On the strength of this showing, the magistrate had a sound basis for crediting the detective's information and issuing the warrant.

The only deficiencies in the warrant affidavit pointed to in Griffin's motion to suppress are the informant's alleged failure to specifically describe the interior of the residence and the detective's failure to corroborate the informant's information "by independent facts." (Doc. 13 at 2.) While it is true that the warrant affidavit does not contain any detailed description of the interior of Griffin's residence, nothing in the affidavit indicates that the detective ever asked for such information from the informant or thought that the home's decor was important to his investigation.[3] The absence of a detailed description of the home's interior certainly did not defeat the affidavit's probable cause showing. Further, Griffin is simply mistaken in asserting that the detective failed

---

[3] Thus, there is nothing in the record to support Griffin's assertion that the informant was "unable" to provide a detailed description of his residence's interior. The record simply reflects that such information was never set forth in the affidavit, *not* that the informant was unable to furnish the information had he been asked to do so.

to corroborate any of the information furnished by the informant. After receiving the informant's initial information, the detective had the informant accompany him to the residence located at 5007 Sandra Street. He then conducted surveillance at that residence, which confirmed that Griffin resided there with his girlfriend, just as the informant had indicated. The detective also furnished the issuing magistrate with a basis for crediting the information furnished by the informant, for he established that the informant had provided reliable information in the past that had led to numerous arrests and convictions of individuals on firearms and drug charges. Griffin's claim that this affidavit failed to establish probable cause is utterly meritless.

At the suppression hearing, Griffin's counsel indicated that she would like an opportunity to call as a witness the informant listed by Det. Frazier in his affidavit.[4] A defendant who challenges the facial validity of a warrant (on the ground that it is not based on probable cause or is otherwise technically deficient) is not entitled to an

---

[4] In a separate order, the Court denied Griffin's motion (doc. 12) for disclosure of the informant's identity.

evidentiary hearing. Only where a defendant seeks to impeach the truthfulness or veracity of the supporting warrant affidavit—through allegations that the affiant engaged in "deliberate falsehood[s] or . . . reckless disregard for the truth" in his affidavit—is the court required to hold a hearing to look behind the four corners of the warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Even upon such a showing, no hearing is required unless "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 156. Here, Griffin has never alleged that Det. Frazier deliberately or recklessly misstated anything in his affidavit.[5] Given the absence of any claim (much less evidence) that the warrant affidavit constitutes false swearing on the part of Det. Frazier, the Court was simply not required to hold an evidentiary hearing. The Supreme Court has made very clear that even where a defendant *is* challenging the veracity of a warrant affidavit, his "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* Griffin—who has simply

---

[5] A defendant who makes such a claim must accompany his allegation with "an offer of proof . . . [that] point[s] out specifically the portion of the warrant affidavit that is claimed to be false." *Franks*, 438 U.S. at 171. Griffin has presented no such offer of proof in this case.

7

made a conclusory request to cross-examine the informant to root out any conceivable misstatements that he may have made to the detective—is seeking to have this Court indulge exactly what the Supreme Court has condemned. Further, demonstrating that the informant lied to the detective would avail Griffin nothing, for it is only deliberate falsity or reckless disregard for the truth on behalf of the *affiant*, "not of any nongovernmental informant," that matters. *Id.* at 171.

Defendant's motion to suppress the evidence seized during the execution of the state search warrant is without merit and should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this ___8th___ day of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA